IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| Damien D. Pugh, | Case No. 2:25-cv-11063 |
| Plaintiff, | Hon. Jonathan J.C. Grey |
| v. | **DEFENDANT DETROIT LAND BANK AUTHORITY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| THE DETROIT LAND BANK AUTHORITY, a public body Corporation, | |
| Defendant. | |

## DEFENDANT DETROIT LAND BANK AUTHORITY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant Detroit Land Bank Authority (the "DLBA" or the "Land Bank") moves this Court to dismiss all of Plaintiff's claims against the DLBA asserted in the Complaint under Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction and under Fed. R. Civ. P. 12(b)(6) because Plaintiff's Complaint fails to state any valid cause of action against the Land Bank. In further support thereof, the DLBA incorporates by reference the attached Brief in Support.

WHEREFORE, for the foregoing reasons, as further stated in its Brief in Support, Defendant DLBA respectfully requests this Court: (i) dismiss all claims

against the DLBA; (ii) award the DLBA its costs and reasonable attorney fees incurred in filing this Motion; and (iii) grant such other and further relief as is just.

Dated: June 18, 2025                    Respectfully submitted,

                                        /s/ Andrew J. Thomas
                                        Andrew J. Thomas (P67948)
                                        500 Griswold Street, Suite 1200
                                        Detroit, MI 48226
                                        (313) 261-9930
                                        athomas@detroitlandbank.org

## LR 7.1 STATEMENT OF CONCURRENCE

In accordance with E.D. Mich. LR 7.1(a), there was a conference, via voicemail messages, between counsel for the Detroit Land Bank Authority and In Pro Per Plaintiff in which undersigned counsel explained the nature of the motion and its legal basis and requested but did not obtain concurrence in the relief sought.

Dated: June 18, 2025

Respectfully submitted,

*/s/ Andrew J. Thomas*
Andrew J. Thomas (P67948)
500 Griswold Street, Suite 1200
Detroit, MI 48226
(313) 261-9930
athomas@detroitlandbank.org

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| Damien D. Pugh,<br><br>                         Plaintiff,<br><br>v.<br><br>THE DETROIT LAND<br>BANK AUTHORITY, a public body<br>Corporation,<br><br><br>                         Defendant. | Case No. 2:25-cv-11063<br><br>Hon. Jonathan J.C. Grey<br><br>**DEFENDANT DETROIT LAND<br>BANK AUTHORITY'S MOTION TO<br>DISMISS PLAINTIFF'S<br>COMPLAINT** |

**DEFENDANT DETROIT LAND BANK AUTHORITY'S BRIEF IN
SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS

## Contents

INTRODUCTION ...................................................................................................1

FACTS ...................................................................................................................2

STANDARD OF REVIEW .....................................................................................3

ARGUMENT ...........................................................................................................5

     I.    The Court Lacks Subject Matter Jurisdiction Under Rule 12(b)(1) ........5

          A.    No Federal Question Jurisdiction Exists.....................................5

          B.    Diversity Jurisdiction Does Not Exist .......................................5

          C.    The Purchase Agreement Forum Selection Clause Requires All Disputes be Litigated in the Courts of Wayne County, Michigan..............6

     II.   Plaintiff Fails to State a Claim Under Rule 12(b)(6) ...........................7

          A.    Plaintiff's Allegations of Forgery and Identity Theft Are Unsupported .....7

          B.    Plaintiff Defaulted on the Purchase Agreement...........................8

          C.    Alleged Violations of Michigan House Bills 5598 and 5599 Are Meritless................9

SUMMARY CHART OF DLBA'S ARGUMENTS.................................................10

CONCLUSION ......................................................................................................11

## **STATEMENT OF ISSUES PRESENTED**

Whether this Court has Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) to hear

Plaintiff's Complaint.

        Defendant DLBA's Answer:    NO


Whether this Court should dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P.

12(b)(6) for failure to state a claim on which relief can be granted.


        Defendant DLBA's Answer:    YES

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 555 U.S. 1030 (2009).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

*Hensley Mfg. v. ProPride, Inc.,* 579 F.3d 603 (6th Cir. 2009)

*Mezibov v. Allen,* 411 F.3d 712 (6th Cir. 2005)

*Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502 (6th Cir. 2013)

**Rules**

Fed. R. Civ. P. 8(a)(2)

Fed. R. Civ. P. 12(b)(1).

Fed. R. Civ. P. 12(b)(6).

## <u>INDEX OF EXHIBITS</u>

Purchase Agreement…………..……………………………………………..Exhibit A

Escrow Agreement (related to the reconveyance deed)…………………..…..Exhibit B

DLBA Granted Plaintiff Multiple Extensions for Property Rehabilitation Beyond the Original 180 Day Purchase Agreement Term……………….....……….Exhibit C

Recorded Reconveyance Deed………………………………....………….Exhibit D

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502 (6th Cir. 2013) ................................................................................................................ 3

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................ 3, 4, 8, 11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................... passim

*Directv, Inc. v. Treesh*, 487 F.3d 471 (6th Cir. 2007) ............................................ 3

Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg., 545 U.S. 308 (2005) ................................................................................................................ 5, 10

*Hensley Mfg. v. ProPride, Inc.,* 579 F.3d 603 (6th Cir. 2009) ................................ 4

*Mezibov v. Allen,* 411 F.3d 712 (6th Cir. 2005) ..................................................... 4

*St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938) .......... 5, 10

*Turcheck v. Amerifund Fin., Inc.*, 272 Mich. App. 341 (2006) .............................. 7

*Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559 (6th Cir. 2003)................................ 3

**Statutes**

28 U.S.C. § 1331 ................................................................................................ 5, 10

28 U.S.C. § 1332 ................................................................................................ 5, 10

Michigan House Bill 5598 .................................................................................. passim

Michigan House Bill 5599 .................................................................................. passim

**Rules**

Fed. R. Civ. P. 12(b)(1) ..................................................................................... 5, 11

Fed. R. Civ. P. 12(b)(6) ..................................................................................... passim

Fed. R. Civ. P. 8(a)(2) ....................................................................................... 3, 7

## **INTRODUCTION**

The Detroit Land Bank Authority (the "DLBA" or the "Land Bank") requests that the Court dismiss Plaintiff's Complaint for two main reasons: (1) the Court does not have jurisdiction to hear this case, and (2) Plaintiff has failed to state a claim upon which relief can be granted.

Plaintiff argues that this case belongs in federal court because it involves Michigan House Bills 5598 and 5599. However, these are state laws, not federal laws, so they do not give the federal court federal question jurisdiction. Plaintiff also claims diversity jurisdiction, which requires the disputed amount to be more than $75,000. However, Plaintiff's limited, nontransferable interest in the property was purchased for just $1,000, which is well below the threshold. Additionally, the Purchase Agreement clearly states that all disputes must be resolved in Wayne County, Michigan courts. **Exhibit A - ¶ 19(c).**

Plaintiff's case is based on the demonstrably false allegation he never agreed to the reconveyance deed, rather he claims said deed is the product of forgery and identity theft. However, the deed attached to Plaintiff's Complaint references the reconveyance deed, as does the purchase agreement and escrow agreement.

Finally, Michigan House Bills 5598 and 5599 do not provide Plaintiff a private cause of action against the DLBA. For these reasons, the DLBA asks the Court to dismiss the Plaintiff's Complaint.

## FACTS

The DLBA previously filed a quiet title case (Wayne County Circuit Court, Case 24-009288-CH) involving the same parties and property, and that case is still ongoing.

The DLBA works to revitalize Detroit by restoring vacant, abandoned, and blighted properties.  In March 2021, Plaintiff executed a purchase agreement agreeing to purchase a limited, nontransferable interest in the property at 3765 Montclair, Detroit, Michigan (hereafter "The Subject Property") for $1,000 from the DLBA. **Exhibit A**. The agreement stated that the DLBA would release its remaining interests in the property only if Plaintiff repaired and occupied it within 180 days.  As part of the agreement, Plaintiff signed a reconveyance deed, held in escrow, which the DLBA could record if Plaintiff failed to meet these conditions. **Exhibit B**.  Despite being given numerous time extensions up until September 2023, Plaintiff did not repair or occupy the property as required. **Exhibit C**.  On November 3, 2023, the DLBA recorded the reconveyance deed. **Exhibit D**.

Plaintiff's forgery, identity theft, and violations of Michigan House Bills 5598 and 5599 allegations relate exclusively to the reconveyance deed.  Plaintiff has not alleged fraud, coercion, or any other basis to invalidate the purchase agreement, the April 30, 2021 deed, attached to Plaintiff's Complaint, or the escrow agreement, even though these documents all reference and acknowledge

the legitimacy of the reconveyance deed.  **Exhibit A, B, and ECF No. 1,**

**PageID.10.**  Moreover, Plaintiff offers no other factual support for his forgery

allegation.  Yet, Plaintiff seeks property interests beyond what was originally

purchased and additional indeterminate damages.

### STANDARD OF REVIEW

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) allows a defendant to test

the legal sufficiency of a complaint without being subject to discovery. *See Yuhasz*

*v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003). When evaluating a

motion under Fed. R. Civ. P. 12(b)(6), a court construes the complaint in the light

most favorable to the plaintiff, accept its factual allegations as true, and draw

reasonable inferences in favor of the plaintiff. *See Directv, Inc. v. Treesh*, 487 F.3d

471, 476 (6th Cir. 2007).

However, the court must also look to the complaint to determine whether it

pleads each of the elements of each cause of action as required by Fed. R. Civ. P.

8(a)(2). This rule "imposes both legal *and* factual demands" on plaintiffs. *16630*

*Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013)

(emphasis in original). "[T]he tenet that a court must accept a complaint's

allegations as true is inapplicable to threadbare recitations of a cause of action's

elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S.

662 (2009). In order to survive a motion to dismiss, a complaint must provide the

grounds of the entitlement to relief, which requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The claims set forth in a complaint must be plausible, rather than conceivable. *See Id.* at 570. A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). (internal citation omitted). A legal conclusion couched as a factual allegation need not be accepted as true, nor are recitations of the elements of a cause of action sufficient. *See Hensley Mfg. v. ProPride, Inc.,* 579 F.3d 603, 609 (6th Cir. 2009). "Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Mezibov v. Allen,* 411 F.3d 712, 716 (6th Cir. 2005). The plaintiff must provide the grounds of their entitlement to relief "rather than a blanket assertion of entitlement to relief." *Twombly,* 550 U.S. at 557).

## ARGUMENT

**I.**   **The Court Lacks Subject Matter Jurisdiction Under Rule 12(b)(1)**

   A.   No Federal Question Jurisdiction Exists

Federal question jurisdiction under 28 U.S.C. § 1331 requires a substantial

federal issue. *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*,

545 U.S. 308 (2005). Plaintiff's Complaint alleges violations of Michigan House

Bills 5598 and 5599, which are state statutes, as opposed to the Constitution,

federal laws, or treaties of the United States.  Plaintiff's accusations do not allege

violation of federal law, and Plaintiff has not identified any federal statute,

constitutional provision, or treaty applicable to this case. Accordingly, federal

question jurisdiction is absent.

   B.   Diversity Jurisdiction Does Not Exist

For this Court to have diversity jurisdiction under 28 U.S.C. § 1332, the

parties must be completely diverse, and the amount in controversy must exceed

$75,000. The amount in controversy must be clear to a legal certainty. *St. Paul*

*Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938). Even if the parties

are diverse, Plaintiff's limited, nontransferable interest in the property was

purchased for only $1,000, which is well below the $75,000 threshold.

Plaintiff seems to claim that damages from alleged identity theft make up the

remaining amount needed to meet the threshold. Thus, if the reconveyance deed is

not fraudulent or tied to identity theft, there is no damage and the amount in controversy remains below the jurisdictional requirement.

The purchase agreement required the reconveyance deed, and Plaintiff acknowledged its existence by signing both the deed and the escrow agreement. **Exhibit A and B**. Therefore, Plaintiff has no evidence or facts to support the identity theft claim and cannot show a valid basis for claiming damages over $75,000. As a result, the requirements for diversity jurisdiction are not met.

 C. <u>The Purchase Agreement Forum Selection Clause Requires All Disputes be Litigated in the Courts of Wayne County, Michigan</u>

The Court lacks jurisdiction over this action because the Purchase Agreement contains a mandatory forum selection clause that requires all disputes to be litigated exclusively in the courts of Wayne County, Michigan.  Specifically, Paragraph 19(c) of the Purchase Agreement provides:

> (c) Governing Law; Jurisdiction; Venue. This Agreement is governed by applicable Michigan law. Purchaser agrees, consents, and submits to the personal jurisdiction of any competent court in Wayne County, Michigan for any action brought against it arising out of this Agreement. Purchaser agrees that service of process at the address and in the manner specified above will be sufficient to put Purchaser on notice. Purchaser also agrees that it will not commence any action against DLBA because of any matter whatsoever arising out of or relating to the validity, construction, interpretation, and enforcement of this Agreement, in any courts other than those in the County of Wayne, Michigan.  **Exhibit A - ¶ 19(c).**

Under Michigan law, mandatory forum selection clauses are enforceable unless they are unreasonable or the result of fraud or overreaching. *Turcheck v. Amerifund Fin., Inc.*, 272 Mich. App. 341, 345 (2006).

Plaintiff 's forgery and identity theft allegations relate exclusively to the reconveyance deed. Plaintiff has not alleged fraud, coercion, or any other basis to invalidate the purchase agreement clause. Thus, the mandatory forum selection clause in the purchase agreement requires that this dispute be litigated exclusively in the courts of Wayne County, Michigan (where, 24-009288-CH, involving the same parties and property, remains ongoing); as such, this Court lacks jurisdiction.

## II.   Plaintiff Fails to State a Claim Under Rule 12(b)(6)

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege sufficient facts to state a claim that is plausible on its face. *Bell A. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plaintiff's Complaint fails to meet this standard.

### A.   Plaintiff's Allegations of Forgery and Identity Theft Are Unsupported

Plaintiff claims the reconveyance deed was forged and involved identity theft but provides no facts or evidence to support these allegations.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "[D]etailed factual allegations" are not required, *Twombly,* 550 U. S., at

555, but the Rule does call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," *id.*, at 570. A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.,* at 556." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).

The reconveyance deed was executed as part of the March 2021 purchase agreement, which Plaintiff does not dispute signing. **Exhibit A and D**. Additionally, Plaintiff acknowledged the reconveyance deed in the escrow agreement. **Exhibit B**. The reconveyance deed was also clearly referenced in the deed attached to Plaintiff's Complaint, which documented his prior, limited, and restricted interest in the property. Plaintiff offers no facts or evidence to support the claims of forgery or identity theft. As a result, these allegations do not meet the requirements for stating a valid claim under Federal Rule of Civil Procedure 12(b)(6). In fact, the documents, including the deed attached to Plaintiff's Complaint, show that the claims of forgery and identity theft related to the reconveyance deed are clearly false. **ECF No. 1, PageID.10.**

B.    Plaintiff Defaulted on the Purchase Agreement

The purchase agreement required Plaintiff to repair, rehabilitate, and occupy the property within 180 days.  Plaintiff cites a medical emergency that prevented

him from meeting the requirements of the Purchase Agreement. In response to this,

Defendant provided generous time extensions, yet Plaintiff was still unable to meet

the requirements for more than two years. **Exhibit C**.  As a result, the Land Bank

lawfully recorded the reconveyance deed, exercising its rights under the

agreement's default provisions. Because Plaintiff failed to fulfill his obligations

under the contract, he has no valid claim to the property interest; as such, Plaintiff

has failed to state a claim under Fed. R. Civ. P. 12(b)(6).

     C.    <u>Alleged Violations of Michigan House Bills 5598 and 5599 Are</u>
            <u>Meritless</u>

     Plaintiff's default under the purchase agreement authorized Defendant to

record the escrowed reconveyance deed.  Moreover, Michigan House Bills 5598

and 5599 authorize criminal penalties related to drafting or submitting false to the

register of deeds but do not create a private cause of action for Plaintiff's claims.

     Michigan House Bill 5598:

> An act to prohibit persons from procuring or placing upon record spurious or
> fraudulent conveyances of real estate, with intent to deceive; to prohibit
> drafting or submitting to the register of deeds a fraudulent document; and to
> prescribe penalties.
> Sec. 1. (1) A person that procures or places upon record any conveyance of
> real estate with intent to deceive any person as to the veracity of the
> document recorded is guilty of a felony punishable by imprisonment for not
> more than 3 years or a fine of not more than $5,000.00, or both.
> (2) A person that knowingly and willfully drafts or submits a document to be
> filed and recorded with a register of deeds in this state with intent to defraud
> the owner of real estate or the owner of an interest in real estate is guilty of a
> felony punishable by imprisonment for not more than 10 years, a fine of not
> more than $5,000.00, or both.

(3) If the register of deeds believes a document was submitted to the register of deeds in violation of this section, the register of deeds may provide evidence of the violation to the county prosecutor in the county where the register of deeds is located.

Michigan House Bill 5599: changes the penalties for certain felonies, including the offenses outlined in Michigan House Bill 5598.

As such, Plaintiff's reliance on Michigan House Bills 5598 and 5599 is misplaced and does not support a valid cause of action.

## SUMMARY CHART OF DLBA'S ARGUMENTS

| Argument | Details | Supporting Evidence/Reasoning |
|---|---|---|
| No Federal Question Jurisdiction | Plaintiff's claims rely on Michigan House Bills 5598 and 5599, which are state laws, not federal laws. | Federal question jurisdiction requires a substantial federal issue (28 U.S.C. § 1331). Plaintiff identifies no federal statute, constitutional provision, or treaty, making federal jurisdiction absent (Grable & Sons, 545 U.S. 308). |
| No Diversity Jurisdiction | Plaintiff's property interest, purchased for $1,000, is far below the $75,000 threshold for diversity jurisdiction. | The amount in controversy must exceed $75,000 (28 U.S.C. § 1332). Plaintiff's identity theft claim lacks evidence, as the reconveyance deed was required by the purchase agreement (**Exhibit A**), negating damages (*St. Paul Mercury*, 303 U.S. 283). |
| Mandatory Forum Selection Clause | The Purchase Agreement mandates disputes be litigated in Wayne County, Michigan courts. | Paragraph 19(c) of the Purchase Agreement (**Exhibit A**) is enforceable under Michigan law unless fraud or overreaching is proven, which Plaintiff does not allege (*Turcheck*, 272 Mich. App. 341). |
| Unsupported Forgery/Identity Theft Claims | Plaintiff's allegations of forgery and identity theft regarding the reconveyance deed lack factual support. | The reconveyance deed is referenced in the purchase agreement (**Exhibit A**), escrow agreement (**Exhibit B**), and Plaintiff's own deed. No evidence supports Plaintiff's claims, failing the plausibility standard (*Twombly*, 550 U.S. 544; Iqbal, 556 U.S. 662). |

10

| Argument | Details | Supporting Evidence/Reasoning |
|---|---|---|
| **Plaintiff's Default on Purchase Agreement** | Plaintiff failed to repair and occupy the property within 180 days, despite extensions until September 2023. | Plaintiff admits a medical emergency prevented compliance (**Exhibit C**). The DLBA lawfully recorded the reconveyance deed under the agreement's default provisions, negating Plaintiff's claim (*Twombly*, 550 U.S. 544). |
| **No Private Cause of Action Under Michigan House Bills 5598/5599** | These bills provide criminal penalties for fraudulent conveyances but no private cause of action. | Plaintiff's reliance on these statutes is misplaced, as they do not support private civil claims against the DLBA, further undermining the Complaint's validity (*Iqbal*, 556 U.S. 662). |

## **CONCLUSION**

For the reasons stated above, the Defendant asks the Court to:

1. Dismiss Plaintiff's Complaint with prejudice under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The Court lacks jurisdiction because there is no federal question or diversity jurisdiction. Additionally, the Plaintiff's claims are not valid, as the reconveyance was lawful, and the allegations of forgery and violations of Michigan law are unsupported and proven false.

2. Grant any other relief the Court finds fair and appropriate.

Date: June 18, 2025

Respectfully submitted,
/s/ Andrew J. Thomas
Andrew J. Thomas (P67948)
500 Griswold Street, Suite 1200
Detroit, MI 48226
(313) 261-9930
athomas@detroitlandbank.org

11

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| Damien D. Pugh, | Case No. 23-cv-10715 |
| Plaintiff, | Hon. Jonathan J.C. Grey |
| v. | **DEFENDANT DETROIT LAND BANK AUTHORITY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| THE DETROIT LAND BANK AUTHORITY, a public-benefit Corporation, | |
| Defendant. | |

**DEFENDANT DETROIT LAND BANK AUTHORITY'S BRIEF IN
SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

# Exhibit A
Purchase Agreement

# DETROIT LAND BANK AUTHORITY



## PURCHASE & DEVELOPMENT AGREEMENT

## 3765 Montclair

This Purchase & Development Agreement (this "*Agreement*") is entered as of March, 2021 (the "*Effective Date*"), by and between the Detroit Land Bank Authority, a Michigan public body corporate ("*DLBA*"), whose address is 500 Griswold Street, Suite 1200, Detroit, Michigan, 48226, and Damien Deshawn Pugh, ("*Purchaser*"), whose address is Po Box

2766, Seattle, Washington 98111. DLBA and Purchaser are referred to from time to time in this Agreement individually as a "*Party*" and, together, as the "*Parties*."

    1.    **Property Description; Sale**. In accordance with the terms and conditions of this Agreement, DLBA will sell and Purchaser will purchase real property (the "*Property*") located in the City of Detroit, County of Wayne, and State of Michigan, more particularly described as

> W MONTCLAIR LOT 484 ST CLAIR HEIGHTS EUGENE SLOMANS
> SUB L18 P50 PLATS, W C R 21/534 30 X 103.28A

Parcel ID: 21041075.

Commonly known as: 3765 Montclair, Detroit, Michigan 48214

    2.    **Purchase Price; Deposit; Taxes**.

        (a)    **Purchase Price**. The purchase price for the Property is $1000.00 (the "*Purchase Price*"). Purchaser will pay the Purchase Price in full at the time of closing on the sale of the Property (the "*Closing*"), less the amount of the Deposit (as defined in <u>Subsection (b)</u>) and any applicable discounts.

        (b)    **Non-Refundable Earnest Money Deposit**. DLBA acknowledges that Purchaser has made a non-refundable earnest money deposit in the amount $1000.00 (the "*Deposit*"), and that this Deposit will be either (i) applied to the Purchase Price at Closing; or (ii) retained by DLBA if the transactions contemplated by this Agreement are not consummated for any reason.

        (c)    **Taxes and Other Charges**. Purchaser may be responsible for paying any drainage charges or other recorded lien charges assessed against the Property prior to the Closing.

    3.    **Title**. Prior to Closing, Purchaser may request that DLBA file and litigate a quiet title action in the Circuit Court of Wayne County, Michigan with respect to certain parts or all of

the Property (the "*Quiet Title Action*") to remove any title defect or eliminate certain eligible liabilities. DLBA may, at its discretion, accept or decline Purchaser's request for any reason. The terms and conditions of DLBA's election to proceed with the Quiet Title Action will be memorialized by a separate agreement (the "*Quiet Title Agreement*") pursuant to which Purchaser would agree to authorize DLBA to file, litigate, and control the Quiet Title Action, cooperate with DLBA in the litigation of the Quiet Title Action and pay DLBA for its services in addition to all associated costs. The Closing Date terms set forth in <u>Section 5</u> will in no way be extended or tolled until the Quiet Title Agreement is fully executed.

      4.    **Financing**. DLBA may, at its sole discretion, subordinate or assign its interests in the Property to assist Purchaser in obtaining any financing necessary for Purchaser to purchase the Property. Any subordination or assignment agreement must be presented to DLBA at least 15 days prior to the Closing. Any such subordination or assignment agreement must be acceptable to DLBA, and DLBA has the complete discretion to make changes to its terms or to reject it for any reason.

      5.    **Closing**.

      (a)    **Time and Place of Closing**. DLBA will notify Purchaser of the prospective Closing date not less than 10 calendar days prior to the Closing, unless otherwise agreed between the Parties. The Closing will take place after satisfaction of the conditions to Closing as specified in this Section, but, unless tolled according to the terms of <u>Section 3</u>, the Closing date will not be more than 60 days from the Effective Date. The Closing will take place at DLBA's offices or such other location designated by DLBA.

      (b)    **Title Company**. DLBA may select a title company and Purchaser will pay all closing costs, including a title insurance policy as applicable. Purchaser may obtain additional title services at Purchaser's sole cost.

      (c)    **Quit Claim Deed**. DLBA will convey its interest in the Property to Purchaser through a Quit Claim Deed (the "*Deed*"). Purchaser waives all warranties pertaining to the Property's condition and takes the Property "AS IS, WHERE IS, WITH ALL FAULTS," as described in <u>Section 6</u>.

      (d)    **Requirements**. DLBA's obligation to effect a Closing hereunder will be subject to the fulfillment by Purchaser of each of the following conditions precedent:

      (i)    **Resolution of Purchaser's Authority**. If Purchaser is not a natural person or persons, Purchaser will furnish to DLBA a certified copy of a resolution satisfactory to DLBA in form and substance, duly adopted by the Board of Directors or governing body of Purchaser, or an authorized vote of the partners, members or joint venturers, authorizing the execution, delivery, and performance of this Agreement and all other documents and actions contemplated hereunder. Purchaser will also furnish to DLBA an incumbency certificate, executed by the corporate secretary of Purchaser, identifying the officers of Purchaser.

(ii)    **Purchaser's Reconveyance Deed**. Purchaser will execute a Reconveyance Deed that reconveys the Property to DLBA (the "*Reconveyance Deed*"). If Purchaser is in breach of any of its obligations set forth in this Agreement, the Reconveyance Deed will be considered delivered to DLBA, and DLBA will have the right to accept and record the Reconveyance Deed at the Wayne County, Michigan Register of Deeds as provided in Section 11.

(iii)   **Documents and Legal Matters**. All documents reasonably requested by DLBA will have been submitted to DLBA and will be satisfactory in form and content as determined by DLBA.

(iv)    **Payment of Purchase Price and Closing Costs**. Purchaser will have tendered payment in full of the Purchase Price and the Closing costs payable by Purchaser.

(v)     **No Default**. There will exist no uncured Event of Default (as defined below) by Purchaser under this Agreement.

(e)     **Payment of Expenses**. Purchaser will also pay the following expenses at Closing:

(i)     any drainage or other recorded lien charges assessed against the Property prior to the Closing.

(ii)    costs related to preparation and filing of the deed and Real Property Transfer Affidavit;

(iii)   the title company's closing and escrow fees; if any; and

(iv)    any title insurance premiums or other costs to issue a title policy without exceptions and any endorsements thereto required by Purchaser.

6.      **Property Condition and Indemnification**. DLBA hereby disclaims any warranty, guaranty or representation, express or implied, oral or written, past, present, or future, of, as to or concerning (a) the condition or state of repair of the Property, or the suitability thereof for any purpose; (b) the extent of any right-of-way, lease, possession, lien, encumbrance, easement, license, reservation, or condition in connection with the Property; (c) the compliance of the Property with any applicable laws, ordinances, or regulations of any government or other body, including, without limitation, compliance with any land use or zoning law or regulation, or applicable environmental, rules, ordinances, or regulations; (d) title to or the boundaries of the Property; and (e) the physical condition of the Property, including, without limitation, the environmental condition of the Property and the structural, mechanical, and engineering characteristics of the improvements to the Property. The sale of the Property will be on an "AS IS, WHERE IS, WITH ALL FAULTS" basis. Purchaser expressly acknowledges and agrees that DLBA makes no warranty or representation, express or implied, or arising by operation of law, including, but not limited to, any warranty of condition, habitability, merchantability, or fitness for a particular purpose, with respect to the Property, and Purchaser hereby expressly waives and releases any such warranty or representation. Purchaser will buy the Property based on its own

investigations, and, by accepting title to all or part of the Property, acknowledges that it has conducted such investigations as it has deemed necessary or advisable. Purchaser will indemnify and hold DLBA and each of its officers, employees, agents and affiliates, and the successors, assigns, heirs and legal representatives of each of the foregoing (collectively, the "***DLBA Indemnified Parties***") free and harmless from and against any and all claims, damages, liabilities, losses, costs, and expenses (including reasonable attorneys' fees and court costs incurred in connection with the enforcement of this indemnity) related to, resulting from, or in any way arising out of the physical condition of the Property or the ownership or operation of the Property prior to, on, and after Closing. Purchaser's indemnification obligations set forth in this Section will survive Closing and will not be merged with the Deed.

**7.      Limitation of Liability. Purchaser understands and acknowledges that DLBA has acquired the Property through foreclosure or similar process, DLBA has never occupied the Property, and DLBA has little or no direct knowledge about the physical condition of the Property. Purchaser agrees that Purchaser is buying the property "as is" (as more fully set forth in <u>Section 6</u> of this Agreement).**

**Notwithstanding any provision to the contrary in this Agreement, DLBA's liability and Purchaser's sole and exclusive remedy in all circumstances and for all claims arising out of or relating in any way to the agreement or the sale of the Property to Purchaser will be limited to no more than the Purchase Price. Purchaser agrees that DLBA will not be liable under any circumstances for any special, consequential, or punitive damages whatsoever, whether in contract, tort (including negligence and strict liability), or any other legal or equitable principle, theory, or cause of action arising out of or related in any way to any claim relating to this agreement or the transfer of the Property to Purchaser, including the condition of the title.**

**8.      No Additional Inspection by Purchaser.**

(a)      By executing this Agreement, Purchaser acknowledges and confirms that it is satisfied with the condition of the Property. Purchaser further acknowledges and confirms that it is not relying on any information provided or to be provided on behalf of DLBA or any statement, representation or other assertion made by DLBA or its employees or agents with respect to the Property. Purchaser further acknowledges and confirms that it has in all respects had an adequate opportunity to inspect and investigate the Property and all matters pertaining to its condition, use, and operation and has completed all investigation, testing, and other due diligence activities relating to the purchase of the Property, including without limitation such market and feasibility studies or analyses as Purchaser deemed necessary or desirable in order to satisfy itself as to market conditions applicable to the Property and with respect to any pollutant or hazardous materials on or about the Property, including lead-based paint or lead-based paint hazards. All testing, inspections and investigations have been conducted at Purchaser's sole cost and expense and Purchaser hereby indemnifies DLBA, and holds DLBA harmless against any loss, costs, damage.

or expenses arising out of such testing, inspections, and investigation performed by Purchaser, its agents, employees, independent contractors, or assignees.

(b)     In the event the Property includes residential structural improvements, DLBA will provide the Purchaser with the Environmental Protection Agency pamphlet "Protect Your Family from Lead in Your Home" and the "Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards" (collectively, the "*Lead Paint Disclosures*"). At Closing, Purchaser will execute Lead Paint Disclosures, if applicable.

9.     **Representations and Warranties of Purchaser**. To induce DLBA to enter into this Agreement, Purchaser makes the following representations and warranties, which will be true and correct on the date of Closing (the "*Closing Date*"):

(a)     Purchaser is authorized and permitted to enter into this Agreement and to perform all covenants and obligations of Purchaser hereunder and Purchaser's right to execute this Agreement is not limited by any other agreements. The execution and delivery of this Agreement, the consummation of the transaction described herein and compliance with the terms of this Agreement will not conflict with, or constitute a default under, any agreement to which Purchaser is a party or by which Purchaser is bound or violate any regulation, law, court order, judgment, or decree applicable to Purchaser. This Agreement is legally binding on and enforceable against Purchaser in accordance with its terms.

(b)     There are no attachments, executions, assignments for the benefit of creditors or voluntary or involuntary proceedings under the Bankruptcy Code, 11 U.S.C. §101, et seq., or under any other debtor relief laws pending or threatened against Purchaser.

(c)     If Purchaser is not a natural person or persons, Purchaser has been duly organized, is validly existing and is in good standing in the jurisdiction in which it was formed, and is qualified to do business in the State of Michigan. This Agreement is, and all documents executed by Purchaser and delivered to DLBA at the Closing will be duly authorized, executed, and delivered by Purchaser.

(d)     No other action by Purchaser, no consent, approval, order, or authorization of any person or entity that is not a party to this Agreement, and no permit, consent, approval, declaration, or filing with any governmental authority is required for Purchaser to execute and deliver this Agreement or perform the transaction contemplated herein.

(e)     Neither Purchaser nor any Affiliate (as defined below) has material unresolved blight or building code violations in the City of Detroit.

(f)     Neither Purchaser nor any Affiliate has been awarded another property by DLBA and then failed to (i) pay the Deposit on time; (ii) close the purchase on time, or (iii) satisfy the requirements to rehabilitate and have the property rehabilitated on time.

The representations and warranties of Purchaser set forth above and elsewhere in this Agreement will survive Closing for a period of two years (the "*Survival Period*"), provided that if Purchaser

is granted any extensions of time under Section 9, then the Survival Period will also automatically be extended for the same period. If DLBA determines during the Survival Period that Purchaser was in breach of any of Purchaser's representations and warranties in this Agreement as of the Closing Date, DLBA will have the right to retain the proceeds from the sale of the Property as liquidated damages and to pursue any of DLBA's remedies set forth in Section 11. Notwithstanding anything to the contrary, the Survival Period will end immediately upon DLBA's recording of the Release of Interest for each Property.

For purposes of this Agreement, "*Affiliate*" means any other person or entity: (a) in which Purchaser has an ownership interest, or (b) that, directly or indirectly, controls, is controlled by, or is under common control with Purchaser; for the purposes of this definition, the term "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of the person or entity in question, whether by the ownership of voting securities, contract, or otherwise.

10. **Purchaser's Obligation to Return the Property to Productive Use.**

(a)     Purchaser will repair and rehabilitate the Property according to the terms set forth in Appendix 1 attached to this Agreement.

(b)     **Demolition.**

(i)     Purchaser is prohibited from demolishing the Property if it is acquired through DLBA's Auction program.

(ii)     If the Property is acquired through the DLBA's Own It Now Program, Purchaser may demolish the Property. If Purchaser elects to demolish the Property, Purchaser will comply with the property maintenance requirements in Section A of Appendix 1. Purchaser will further provide good faith proof of progress regarding the demolition every 30 days after Closing. Good faith proof of progress may include signed contracts, pulled permits, utility clearances, pictures, and final certificates. The demolition and completion of the Property shall be completed no later than 180 after Closing Date, subject to any extensions granted under Subsection (d) below.

(c)     When Purchaser considers all work on the Project (as defined in Appendix 1) to be complete, it will so notify DLBA. DLBA will thereafter make or cause to be made such inspection or, at DLBA's election, request that Purchaser provide any further documentation of completion of the Project. Upon DLBA's determination that the Project is complete, DLBA will record with the Wayne County, Michigan Register of Deeds a Release of Interest (the "*Release of Interest*") which will be conclusive acknowledgment by DLBA of Purchaser's satisfaction of its obligations under this Section. If DLBA determines the Project is not complete, DLBA will so notify Purchaser in writing indicating in what respects Purchaser has failed to implement the Project or is otherwise in default, and what measures and acts Purchaser will take or perform to cure such nonconformity or default. Purchaser will thereafter promptly complete the Project.

(d)      If Purchaser cannot timely complete a Project, but has made measurable progress and exercised diligence in working to do so, Purchaser may apply to DLBA, in writing and no later than 30 days prior to the required Project completion date, for an extension, and in such writing Purchaser will explain the reasons that the extension is required and provide an estimate of the revised completion date. In DLBA's sole discretion, DLBA may grant Purchaser an extension of any length to complete the work or declare the Purchaser in default.

(e)      If Purchaser fails to meet any requirement in <u>Appendix 1</u>, complete the Project, or otherwise report progress on implementation as specified by this Agreement, Purchaser will be in default. Any such default and Purchaser's failure to cure such default within 30 days after written demand by DLBA to correct said default will be deemed to constitute an *Event of Default*. Pursuant to the remedies otherwise specified in <u>Section 11</u>, DLBA will have the right to reconvey the Property back to DLBA by recording the Reconveyance Deed at the Wayne County, Michigan Register of Deeds upon the occurrence of an uncured Event of Default subsequent to Closing and prior to the recording of the Release of Interest.

11.      **Defaults and Events of Default**.

(a)      **Default by Purchaser**. The occurrence of any one or more of the following events shall constitute a *Default* of this Agreement by Purchaser:

(i)      Purchaser fails to complete the Project or otherwise report progress on implementation as specified by this Agreement.

(ii)      Purchaser fails to pay real estate taxes or assessments or any part thereof on the Property when due, or places any encumbrance unauthorized by this Agreement, or suffers any levy or attachment to be made, or any materialman's, mechanic's, or construction lien or any other unauthorized encumbrance to attach.

(iii)      Purchaser violates any of the terms and conditions of this Agreement, except as otherwise provided in this Section.

(iv)      Any transfer of all or any part of the Property or of any right or interest in all or any part of the Property in violation of <u>Section 19</u>.

(v)      If Purchaser is not a natural person or persons, any change of 10% or more in the ownership or distribution of the stock of the Purchaser or with respect to the identity of the parties in control of the Purchaser.

(b)      **Failure to Cure Default**. Any such Default by Purchaser as set forth in <u>Section 12(a)(i)-(iii)</u> and Purchaser's failure to cure such Default within 30 days after written demand by DLBA to correct said Default will be deemed to constitute an *Event of Default*. In the event Purchaser is in good faith contesting any amount due under <u>Section 12(a)(ii)</u>, the Purchaser may, in lieu of paying said amount, deposit said amount in an escrow account which will be disbursed upon the resolution of the dispute, or if the amount relates to a construction lien, the Purchaser may bond over the lien in the manner prescribed by law. Any Default pursuant to

Sections 12(a)(iv)-(v) are hereby deemed to be material, non-curable *Event of Default* without the necessity of any notice by DLBA to Purchaser thereof. DLBA may, in its sole discretion, waive in writing any Default or Event of Default by the Purchaser.

12.     **DLBA's Remedies upon Purchaser's Default**. Upon an Event of Default, DLBA may seek any and all of the following as its remedies.

(a)     DLBA will have the right to terminate this Agreement by providing written notice of termination to Purchaser and to retain the Purchase Price as liquidated damages. DLBA and Purchaser agree that (i) it would be impractical and extremely difficult, if not impossible, to fix actual damages that would be suffered by DLBA as a result of a breach of this Agreement by Purchaser; and (ii) the aforesaid liquidated damages are a fair and reasonable amount to be retained by DLBA as agreed and liquidated damages in light of DLBA's removal of the Property from the market and the costs incurred by DLBA and will not constitute a penalty or a forfeiture.

(b)     In the event of a breach of this Agreement by Purchaser, and in addition to the remedy provided in Subsection (a), DLBA may in its sole discretion take any one or more of the following actions:

(i)     record the Reconveyance Deed at the Wayne County Register of Deeds Office, reconveying ownership of the Property back to DLBA;

(ii)     take immediate possession of the Property;

(iii)     enter and secure the Property;

(iv)     remove all occupants and personal belongings from within the Property;

(v)     take immediate ownership of all improvements and fixtures intended to be permanently attached to the Property; and

(vi)     offer the Property for sale to other prospective purchasers, whether by auction or otherwise, or hold the Property.

Purchaser will indemnify and hold DLBA Indemnified Parties free and harmless from and against any and all claims, damages, liabilities, losses, costs and expenses (including reasonable attorneys' fees and court costs incurred in connection with the enforcement of the indemnity) related to, resulting from, or in any way arising out of DLBA exercising its remedial rights under the Reconveyance Deed and this Agreement.

13.     **Post-Closing Property Inspection**. Purchaser will permit agents of DLBA, its investigators, or law enforcement officials to inspect the Property, without notice, until a Reconveyance Deed or Release of Interest has been filed for each Property to verify compliance with Purchaser's obligations in Section 9.

14.     **Brokerage**. If Purchaser has employed a broker or real estate agent in connection with the transactions contemplated by this Agreement, Purchaser agrees to indemnify, defend, and

hold DLBA harmless from and against any claims for real estate broker's fees or any compensation sought by a broker or real estate agent employed by Purchaser in connection with the transactions contemplated by this Agreement unless otherwise agreed in writing.

15.     **DLBA Authority**. DLBA has full power and authority to enter into this Agreement and to perform all its obligations hereunder, and has taken all action required by law, its governing instruments, or otherwise to authorize the execution, delivery, and performance of this Agreement and all the deeds, agreements, certificates, and other documents contemplated herein.

16.     **Notice; Updates**. Except as otherwise expressly provided herein, all notices and communications hereunder must be in writing and will be deemed to have been given when either hand-delivered, sent by first class mail, sent by national overnight courier, or emailed.

Notice to Purchaser should be sent to the address above set forth, another such other address as Purchaser designates in writing to DLBA, or damienpugh97@gmail.com.

Notice to DLBA will be provided to:

> Detroit Land Bank Authority
> Attn: Closing Team
> 500 Griswold Street, Suite 1200
> Detroit, Michigan 48226
> closingteam@detroitlandbank.org

All documentation and updates to be provided by Purchaser pursuant to Section 10 should be sent by email (with the Property address in the subject line) or by first-class mail to:

> Detroit Land Bank Authority
> Attn: Compliance Team
> 500 Griswold Street, Suite 1200
> Detroit, Michigan 48226
> documents@detroitlandbank.org

17.     **Integration; Modification**.

(a)     This Agreement contains both DLBA's and Purchaser's entire intentions and understandings in regard to the sale of the Property. This Agreement supersedes any prior agreements, whether written or oral.

(b)     DLBA and Purchaser may modify this Agreement only in a writing signed by both Parties.

18.     **Assignment; Notification upon Transfer of Property**. Until a Release of Interest is recorded, Purchaser may not assign, transfer, convey, or pledge its rights or obligations under this Agreement or with respect to the Property without the prior written consent of DLBA, which consent DLBA may withhold in its sole discretion.

19.     **Miscellaneous**.

(a)     **Severability**. If any one or more of this Agreement's provisions is/are held invalid or unenforceable in any respect, all other provisions will remain valid and enforceable as stated in this Agreement.

(b)     **Captions**. The headings of the Sections and other subdivisions in this Agreement are for convenience only and will not be used to construe or interpret the scope or intent of this Agreement or in any way affect the same.

(c)     **Governing Law; Jurisdiction; Venue**. This Agreement is governed by applicable Michigan law. Purchaser agrees, consents, and submits to the personal jurisdiction of any competent court in Wayne County, Michigan for any action brought against it arising out of this Agreement. Purchaser agrees that service of process at the address and in the manner specified above will be sufficient to put Purchaser on notice. Purchaser also agrees that it will not commence any action against DLBA because of any matter whatsoever arising out of or relating to the validity, construction interpretation, and enforcement of this Agreement, in any courts other than those in the Wayne County, Michigan.

(d)     **Affiliates**. If any Affiliate of Purchaser will take any action, which, if done by Purchaser would constitute a breach of this Agreement, the same will be deemed a breach by Purchaser with right legal effect.

(e)     **Binding Effect**. This Agreement will be binding on the heirs, devisees, legal representatives, claimants, successors, and assignees of the Parties.

(f)     **Counterparts**. This Agreement may be executed in counterparts, each of which will be deemed to be an original document but together will constitute one instrument.

(g)     **Waiver**. No waiver by either Party of any of its rights or remedies hereunder or otherwise will be considered a waiver of any other subsequent right or remedy. Except as expressly provided herein, no waiver by either Party of any of its rights or remedies hereunder or otherwise will be effective unless such waiver is evidenced in a written instrument executed by the waiving Party.

(h)     **Dates**. If any date herein set forth for the performance of any obligations of any Party, or for the delivery of any instrument or notice as herein provided, should be on a Saturday, Sunday, or legal holiday, the compliance with such obligations (or such delivery, as the case may be) will be deemed acceptable on the next business day following such Saturday, Sunday, or legal holiday.

**[Signatures commence on following page]**

## SIGNATURE PAGE

The Detroit Land Bank Authority and Damien Deshawn Pugh have caused this Purchase & Development Agreement for 3765 Montclair to be executed as of the Effective Date.

**DETROIT LAND BANK AUTHORITY**

Dated: 3/30/2021

By: *Jeanne Hanna*

Name: Jeanne Hanna

Title: Director, Dispositions

**DAMIEN DESHAWN PUGH**

Dated: 3/16/2021

By: *Damien Deshawn Pugh*

Name: Damien Deshawn Pugh

Title: Owner/Manager

**[Remainder of page intentionally left blank]**

## APPENDIX 1

### Terms of Home Repair and Rehabilitation

Pursuant to and consistent with the terms of the Purchase & Development Agreement, Purchaser will timely repair and rehabilitate the Property (the "*Project*") according to the following terms and conditions.

A.     **Within 15 days after Closing:**

i.   All Purchasers will provide exterior photos of all four sides of the property showing that, from foundation to roof, the Property is:

a.   Secured. All openings must be securely covered. Boards are okay for now at this time.

b.   Maintained. Lawn and other overgrowth is cut.

c.   Free of external debris. No construction or household materials in the yard.

Purchaser will continue to maintain the Property accordingly and ensure it is secured until a Release of Interest is recorded.

ii.   If the Property was purchased through the Own It Now program, Purchaser will schedule a preliminary inspection or pre-sale inspection with the City of Detroit Building, Safety Engineering and Environmental Department ("*BSEED*"). A receipt for the inspection must be submitted to DLBA at the time of scheduling, and a copy of the Preliminary Inspection Report must be provided to DLBA within 7 days of receipt by Purchaser.

B.     **Within 30 days after Closing Date, and every 30 days thereafter until the Release of Interest is recorded**, Purchaser shall provide proof of good faith progress showing that the Property is being renovated, and the Property is on track to be renovated into a habitable condition in the prescribed timeframe, such as:

i.   Before and after photos showing progress on the property;

ii.   Copies of pulled permits and inspections from BSEED;

iii.   Estimates or signed contracts with contractors; and

iv.   Evidence that one or more utilities (e.g. water, electric, gas) have been and remain activated.

C.     **Within 150 days after Closing**, Purchaser shall provide a date by which the Property will be completed and occupied, as well as any other proof of substantial progress.

D.     **Within 180 days after Closing**, Purchaser shall provide proof that the Property is renovated and occupied as defined by meeting each of the requirements defined below.

i.   **Exterior**. Photos of all four sides of the property showing that, from foundation to roof, the Property looks maintained on the outside with no boards or blight, and the yard is maintained with no debris.

      ii.  **Occupancy**. Evidence the property is occupied by someone on a day-to-day basis. Evidence may include, but is not limited to:

        a.  Photos of furnishings;

        b.  Photos of completed bathroom(s);

        c.  Photos of completed kitchen with appliances;

        d.  Photos of installed furnace;

        e.  Photos of installed water heater;

        f.  DTE bill with chart showing gas and electric usage appropriate for an occupied property;

        g.  Water bill with chart showing appropriate usage for an occupied property;

        h.  Copy of driver's license matching property address;

        i.  Executed lease agreement;

     iii.  **BSEED Inspection**. Documentation that one or more of the following inspections have been conducted by BSEED:

        a.  Preliminary inspection;

        b.  Inspection pursuant to a Certificate of Compliance (i.e. rental inspection); or

        c.  Inspection pursuant to an electrical, plumbing, mechanical, or general building permit pulled from BSEED.

     E.      Purchaser will further provide DLBA with any additional reports upon request by DLBA and will diligently respond to DLBA's requests for further information or documentation in follow-up to any report. Consistent with Purchaser's obligations under the Purchase Agreement, Purchaser will make the Property available for review for verification of work performed as DLBA deems necessary.

     F.      During the renovation process, Purchaser will ensure the Property complies with all applicable local, state, and federal requirements, including but not limited to City of Detroit property codes, state and federal codes related to hazardous materials, and requirements of the State Historic Preservation Office and the Detroit Historic Commission.

If the DLBA determines that Purchaser has not complied with the terms of this Agreement, the DLBA will notify Purchaser in writing indicating in what respects Purchaser has failed to comply, and what measures and acts Purchaser must take or perform in to cure such noncompliance. Purchaser shall thereafter complete the work as required by this Agreement and any time period required under the written notice of noncompliance.

**[Remainder of page intentionally left blank]**

### Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards

**Lead Warning Statement**

Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based pant hazards is recommended prior to purchase.

1) **Seller's Disclosure (Seller to complete)**

   a) Presence of lead-based paint or lead-based paint hazards (check (i) or (ii) below):

       i) Known lead-based paint or lead-based paint hazards are present in the housing (explain): _____

       ii) **X** Seller has no knowledge of lead-based paint or lead-based pant hazards in the housing.

   b) Records and reports available to the seller (check (i) or (ii) below):
       i) Seller has provided the purchaser with all available records and reports pertaining to lead-based pain or lead-based paint hazards in the housing (list documents below).
       ii) **X** Seller has no reports or records pertaining to lead-based paint or lead-based paint hazards in the housing.

   c) Purchaser's Acknowledgment Re: 3765 Montclair
   d) Purchaser has received copies of all information listed above.
   e) Purchaser has received the pamphlet: *Protect Your Family from Lead in Your Home.*
   f) Purchaser has (check (i) or (ii) below):
       iii) received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint or lead-based paint hazards; or
       iv) **X** waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint or lead-based paint hazards.

2) **Agent's Acknowledgment (Agent to initial if applicable)**

   g) Agent has informed the seller of the seller's obligations under 42 U.S.C 4852d and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

*Jeanne Hanna*
_____     Date  3/30/2021
**Detroit Land Bank Authority**

*Damien Deshawn Pugh*
_____     Date  3/16/2021
**Damien Deshawn Pugh**

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| Damien D. Pugh, | Case No. 23-cv-10715 |
| Plaintiff, | Hon. Jonathan J.C. Grey |
| v. | **DEFENDANT DETROIT LAND BANK AUTHORITY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| THE DETROIT LAND BANK AUTHORITY, a public-benefit Corporation, | |
| Defendant. | |

**DEFENDANT DETROIT LAND BANK AUTHORITY'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

# Exhibit B

Escrow Agreement (related to the reconveyance deed)

Agreement Date: 5/4/2021
Buyer(s): Damien Deshawn Pugh
Buyer Address: PO Box 2766, Seattle, WA 9811
Property Street Address: 3765 Montclair, Detroit, MI 48214
Termination Date: 5/4/2023

## ESCROW AGREEMENT FOR DELIVERY AND RECORDING OF
## RECONVEYANCE DEED OR RELEASE OF INTEREST

This escrow agreement (the "Agreement") is entered into on 5/4/2021 between the Detroit Land Bank Authority, of 500 Griswold Street, Suite 1200, Detroit, Michigan 48226 ("Seller"); Damien Deshawn Pugh, of PO Box 2766, Seattle, WA 9811 ("Purchaser"); and AMROCK, of 662 Woodward Ave, Detroit, Michigan 48226 ("Escrow Agent") on the following conditions set forth below:

1. **Purpose.** Purchaser and Seller have entered into the Purchase Agreement attached hereto (the "Purchase Agreement"), for the premises commonly known as 3765 Montclair, Detroit, MI 48214, (the "Property"), and more particularly described as:

Legal Description: Lot 484, ST Clair Heights Eugene H. Sloman's Sub, according to the plat thereof, as recorded in Liber 18, Page 50 of Plats, Wayne County Records.

Parcel ID:

Purchaser has executed a Reconveyance Deed attached hereto (the "Reconveyance Deed") that reconveys the Property to Seller if Purchaser fails to rehabilitate the Property in accordance with the terms set forth in the Purchase Agreement. If at any time Purchaser fails to timely comply with any condition, covenant or obligation to rehabilitate the property and cause it to be occupied, or if Purchaser is found during the Survival Period to have been in breach of any representation or warranty contained in the Purchase Agreement, Seller may, in its sole discretion, direct the Escrow Agent to release and deliver the Reconveyance Deed to the Wayne County Register of Deeds for recording.

2. **Execution and Deposit of Reconveyance Deed and Release of Interest.** Purchaser hereby deposits the Reconveyance Deed with Escrow Agent for release and delivery subject to the conditions set forth in this Agreement. Seller hereby deposits the Release of Interest with Escrow Agent for release and delivery subject to the conditions set forth in this Agreement.

3. **Duties of Escrow Agent.**

Escrow Agent shall hold the Reconveyance Deed until Escrow Agent receives written notice from Seller that any condition, covenant, or obligation set forth in the Purchase Agreement has not been satisfied. On receipt of a written notice from Seller that the obligations under the Purchase Agreement have not been satisfied, Escrow Agent shall record the Reconveyance Deed with the Wayne County Register of Deeds.

Escrow Agent shall hold the Release of Interest until Escrow Agent receives written notice from Seller that all conditions, covenants, or obligations set forth in the Purchase Agreement has been satisfied. On receipt of a written notice from Seller that the obligations under the Purchase Agreement have been satisfied, Escrow Agent shall record the Release of Interest with the Wayne County Register of Deeds.

**City Employee Discount Purchaser (CEDP):** Pursuant to the terms of the Purchase Agreement CEDPs will remain under compliance with the Seller for a minimum of three (3) years from the Closing. The Seller will instruct the Escrow Agent or DLBA Staff Member to record the Release of Interest for a CEDP Property ONLY after ALL of the following conditions have been satisfied:

a. The CEDP has owned the property for a minimum of three (3) years from the Closing.

   AND

b. The CEDP has rehabilitated the Property in accordance with the terms set forth in the Purchase Agreement.

**Detroit School Employee Discount Purchaser (DSEDP):** Pursuant to the terms of the Purchase Agreement DSEDPs will remain under compliance with the Seller for a minimum of three (3) years from the Closing. The Seller will instruct the Escrow Agent or DLBA Staff Member to record the Release of Interest for a DSEDP Property ONLY after ALL of the following conditions have been satisfied:

a. The DSEDP has owned the property for a minimum of three (3) years from the Closing.

   AND

b. The DSEDP has rehabilitated the Property in accordance with the terms set forth in the Purchase Agreement.

If Escrow Agent fails to receive notice from the Seller in writing concerning the request to record the Reconveyance Deed or Release of Interest prior to the termination date stated in this Agreement, the Escrow Agent will take actions as referenced in paragraph 4.

**4. Termination.** This Agreement shall terminate with the recording of the Reconveyance Deed or Release of Interest as directed in section 3 or on 5/4/2023, whichever occurs first. If Escrow Agent is not directed to record either the Reconveyance Deed or the Release of Interest before the termination date of this Agreement, Escrow Agent shall return the Reconveyance Deed and the Release of Interest to the Seller. At the time that the Escrow Agent returns the Reconveyance Deed and Release of Interest to the Seller the Escrow Agent is released from any liability or responsibility under this agreement.

**5. Escrowed Recording Fees.** Purchaser and Seller agree that Escrow Agent will be holding in an account the recording fees for the future recording of either the Reconveyance Deed or Release of Interest. Escrow Agent will use such held back recording funds to cause the recording of the Reconveyance Deed or Release of Interest.

**6. Reliance by Escrow Agent.** Escrow Agent has no responsibility except for the performance of its duties as stated in this Agreement, and no additional duties shall be inferred or implied under this Agreement. Seller and Purchaser acknowledge that any determination of concerning the decision to record the Reconveyance Deed or record the Release of Interest is made at the sole direction of the Seller. Upon satisfactory completion of its duties in Paragraphs 3 and 4 of this Agreement, Escrow Agent's duties and responsibilities shall be deemed complete and Escrow Agent's obligations shall terminate under this Agreement. Seller and its assignees and Purchaser (s) and its heirs and assignees, hereby agree to hold harmless the Escrow Agent with respect to its performance under this Escrow Agreement For Delivery and Recording of Reconveyance Deed or Release of Interest and including but not limited to any recordings.

**7. Notice.** All notices, requests, or other communications that may be given or that are required to be given by either party under this Agreement must be in writing and shall be addressed to the other Party at the email addresses or property addresses set forth below. Each Party shall deliver all Notices by either personal delivery with confirmation of receipt or by e-mail with confirmation of transmission and receipt. All such notices will be deemed to have been given for purposes of this Agreement upon the date of receipt, except that whenever a notice is received on a day that is not a business day, the day of receipt will be deemed to be the next business day. The addresses for delivery of notices under this Agreement are set forth below. Either party may from time to time by delivery of notice to the other party designate a different address for notices.

DocuSign Envelope ID: 8D3C7DB8-82D6-4789-A03F-68525D68CD32

Escrow Agent

    Property Address for personal delivery: AMROCK, Attention: Escrow Team, 662 Woodward Ave, Detroit, MI 48226

    Email delivery: dlbaclosings@amrock.com

Seller

    Property Address for personal delivery: Detroit Land Bank Authority, Attention: Deputy Director, 500 Griswold Street, Suite 1200, Detroit, MI 48226

    Email delivery: dlbaclosings@detroitlandbank.org

8. Amendments. This Agreement may only be amended by a written agreement signed by both Seller and Purchaser and received and accepted by Escrow Agent.

9. Successors and assigns. This Agreement shall bind the heirs, assigns, and successors of the parties.

10. Effective date. This Agreement shall become effective when signed by all of the parties.

Detroit Land Bank Authority

Dated: 5/4/2021

By: Jeanne Hanna
Its: Interim Director of Disposition

Dated: _____

Damien Deshawn Pugh

## ESCROW AGENT'S ACCEPTANCE

AMROCK, a Michigan corporation, accepts this escrow agreement and acknowledges receipt of the Reconveyance Deed and Release of Interest.

Amrock

Dated: 5/4/21

By: _____
Its: Agent

<u>Escrow Agent</u>

Property Address for personal delivery: AMROCK, Attention: Escrow Team, 662 Woodward Ave, Detroit, MI 48226

Email delivery: dlbaclosings@amrock.com

<u>Seller</u>

Property Address for personal delivery: Detroit Land Bank Authority, Attention: Deputy Director, 500 Griswold Street, Suite 1200, Detroit, MI 48226

Email delivery: dlbaclosings@detroitlandbank.org

**8. Amendments.** This Agreement may only be amended by a written agreement signed by both Seller and Purchaser and received and accepted by Escrow Agent.

**9. Successors and assigns.** This Agreement shall bind the heirs, assigns, and successors of the parties.

**10. Effective date.** This Agreement shall become effective when signed by all of the parties.

Detroit Land Bank Authority

Dated: _____        _____
                                      By: Jeanne Hanna
                                      Its: Interim Director of Disposition

Dated: ___0504-21___        _____
                                      Damien Deshawn Pugh

ESCROW AGENT'S ACCEPTANCE

**AMROCK**, a Michigan corporation, accepts this escrow agreement and acknowledges receipt of the Reconveyance Deed and Release of Interest.

                                      Amrock

Dated: ___5/4/21___        _____
                                      By:
                                      Its: Agent

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

Damien D. Pugh,

Plaintiff,

v.

THE DETROIT LAND
BANK AUTHORITY, a public-benefit
Corporation,

Defendant.

Case No. 23-cv-10715

Hon. Jonathan J.C. Grey

**<u>DEFENDANT DETROIT LAND
BANK AUTHORITY'S MOTION TO
DISMISS PLAINTIFF'S COMPLAINT</u>**

**<u>DEFENDANT DETROIT LAND BANK AUTHORITY'S BRIEF IN
SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

# Exhibit C

DLBA Granted Plaintiff Multiple Extensions for Property Rehabilitation Beyond the Original
180 Day Purchase Agreement Term



**3765 Montclair [District 4] - WARNING LETTER**

Delete

**Message**   Details

From: **DLBA Compliance Team**                                      9:51 AM | Apr 13, 2023
To:                                                        Cc: damienpugh97@gmail.com
Damien Deshawn Pugh (/lightning/r/0033a00002c1Tv4AAE/view)   (mailto:damienpugh97@gmail.com)

**Related**

(0) (/lightning/r/EmailMessage/02s3a00001

(1) (/lightning/r/EmailMessage/02s3a00001

Damien Deshawn Pu...
Type:      Contact

View All
(/lightning/r/EmailMessage/02s3a00001J62pIAAB/related/EmailMes

Other Related People (0)

**Related To (1)**

CMP-0018392 (/lightning/r/aEk3a0000000...
Compliance



**buildingdetroit.org**

Dear Damien Deshawn Pugh:

**WARNING!**
**Potential Reconveyance**

Your case is delinquent and immediate action is required. You have not submitted sufficient proof of renovation progress or responded to prior requests for updates. Compliance delinquency violates the terms of your signed purchase agreement. As a result, your property is at risk.  If we do not receive the information requested below, we will take ownership by recording the reconveyance deed, and you will forfeit all costs and expenses related to the purchase and renovation of this property.

**IN ORDER TO BE MOVED INTO AN ACTIVE COMPLIANCE STATUS YOU MUST PROVIDE PROOF THAT YOU HAVE COMPLETED THE OUTSTANDING REHAB REQUIREMENTS LISTED IN THE CHART BELOW WITHIN 15 DAYS.**

If an item listed under Rehab Requirements does not have a date listed in the Date Received column, we have not received it and it is considered outstanding.

**Rehab Requirements**

| Rehab Requirements | Date Received |
|---|---|
| BSEED Inspection | 7/15/2021 |
| Photos of working kitchen with a cooking element (stove- microwave etc.) | |
| Photo of installed water heater | |
| Photos of installed furnace | |
| Photos of working bathroom (sink and toilet) | |
| *If property is for sale or rent, please provide a City of Detroit Rental Registration with Signed Lease agreement or a Sales Listing* | |
| | |

**Contact Compliance**

All updates must be submitted using your **Update Reporting Link (URL):**
detroitlandbankfiles.force.com//TVA_CFB__RequestFile?
aWQ9MjAxOS0xMC0wOCAxNToxMToxMi8jYUY0M2EwMDAwMDBUUIdoQ0FP
(If the link above doesn't work, CLICK HERE

The Detroit Land Bank Authority's lobby is open **by appointment only.** Please note, the Guardian Building and the DLBA requires everyone entering the building to wear a mask. Visitors must make an appointment at least one business day in advance by calling your DLBA representative, (313) 974-6869, or emailing inquire@detroitlandbank.org. Please check the DLBA's website for updates and closures.

If you have Compliance questions or concerns, call your Compliance Representative, Alfreda Stallion, at (313) 261-9938. If you cannot reach your Compliance Representative, please call, 1-313-974-6869.
**Thank you for improving Detroit's neighborhoods, one house at a time!**



**3765 Montclair – ATTENTION: Please Read This Important Information!**

Delete

**Message**     Details

From: **DLBA Compliance Team**                                    1:37 PM | Aug 14, 2023
To:                                                      Cc: damienpugh97@gmail.com
Damien Deshawn Pugh (/lightning/r/0033a00002c1Tv4AAE/view)   (mailto:damienpugh97@gmail.com)

**Related**

(0) (/lightning/r/EmailMessage/02s3a00001

(1) (/lightning/r/EmailMessage/02s3a00001

Damien Deshawn Pu...
Type:   Contact

View All
(/lightning/r/EmailMessage/02s3a00001LWEGiAAP/related/EmailMe

**Other Related People (0)**

**Related To (1)**

CMP-0018392 (/lightning/r/aEk3a000000...
Compliance



**buildingdetroit.org**

**Damien Deshawn Pugh**
**Po Box**
**2766**
**Seattle, Washington 98111**

**ATTENTION - 2nd WARNING**

Dear Damien Deshawn Pugh:
I am reaching out to you in regards to 3765 Montclair. Your case is severely delir
have not submitted sufficient proof of renovation progress or responded to prior r
updates.

Please contact your Compliance Representative if you are **experiencing any har
is preventing you from fulfilling your** Purchase Agreement **and avoid DLBA f
OWNERSHIP of your property.**

You may be eligible for one of the options below, please immediately contact your
representative, to discuss your eligibility:

**Subordinate Agreement**. If you are looking to get a loan from a private lende
request a letter from DLBA that will allow you to finance your property.

**Assignment Sales Agreement (Ownership Transfer):** You may be allowed to
property to a third party, with DLBA's written permission (processing fees apply)
unable to continue with your rehab, please contact your compliance representative
your eligibility status. See below for initial requirements:

-Proof of hardship
-Proof of renovation progress
-Current on Property Taxes (No Delinquency)
-No outstanding Blight Tickets

   **IN ORDER TO BE MOVED INTO AN ACTIVE COMPLIANCE STATUS YOU MUST PROVIDE PR
   YOU HAVE COMPLETED THE OUTSTANDING REHAB REQUIREMENTS LISTED IN THE CHA
                         WITHIN 15 DAYS.**

   If an item listed under Rehab Requirements does not have a date listed in the Date Receive
              we have not received it and it is considered outstanding.

### Rehab Requirements

| Rehab Requirements | Date Received |
|---|---|
| BSEED Inspection | 7/15/2021 |
| Photos of working kitchen with sink, preparation surface, and cooking element (stove- microwave etc.) | |
| Photo of installed water heater | |
| Photos of installed furnace | |
| Photos of working bathroom (sink and toilet) | |
| *If property is for sale or rent, please provide a City of Detroit Rental Registration with Signed Lease agreement or a Sales Listing* | |

All updates must be submitted using your **Update Reporting Link (URL):**
        detroitlandbankfiles.force.com//TVA_CFB__RequestFile?
        aWQ9MjAyMS0wNS0wNSAxMzozMzoyNi8jYUY0M2EwMDAwMDBicUR
        (If the link above doesn't work, CLICK HERE)

If you have Compliance questions or concerns, call your Compliance
Representative, **Tiffany Elder**, at **(313) 989-4952**. If you can't reach your Comp
Representative, please call the Compliance Team's direct line, **313-974-6869.**

        **Thank you for improving Detroit's neighborhoods, one house at a tim**

Sincerely,
Tiffany Elder
The Compliance Team
We look forward to hearing from you soon,



**3765 Montclair - MORE INFORMATION STILL NEEDED!**

Delete

**Message**    Details

**Related**

From: **DLBA Compliance Team**    1:32 PM | Sep 21, 2023

To:                    Cc: damienpugh97@gmail.com

Damien Deshawn Pugh (/lightning/r/0033a00002c1Tv4AAE/view)    (mailto:damienpugh97@gmail.com)

**(0) (/lightning/r/EmailMessage/02sQI000000...**

**(1) (/lightning/r/EmailMessage/02sQI000000...**

Damien Deshawn Pu...

Type:    Contact

View All

(/lightning/r/EmailMessage/02sQI000001FhIflAK/related/EmailMess

**Other Related People (0)**    ⓘ

**Related To (1)**

CMP-0018392 (/lightning/r/aEk3a000000...

Compliance

**3765 Montclair- This is your FINAL warning- UPDATES DUE BY 9/28/23**

Delete

---

**Message**   Details                                                    **Related**

 From: DLBA Compliance Team                    1:31 PM | Sep 21, 2023            **(0)** (/lightning/r/EmailMessage/02sQl00000
To:                                          Cc: damienpugh97@gmail.com
Damien Deshawn Pugh (/lightning/r/0033a00002c1Tv4AAE/view)                                           **(1)** (/lightning/r/EmailMessage/02sQl00000
(mailto:damienpugh97@gmail.com)

                                                                                Damien Deshawn Pu...
                                                                              Type:   Contact

**3rd and FINAL WARNING LETTER**                                                         View All
9/21/2023                                                                 (/lightning/r/EmailMessage/02sQl000001Frt3IAC/related/EmailMess

Dear Damien Deshawn Pugh,                                                  **Other Related People (0)**   ⓘ

It is the intent of the Detroit Land Bank Authority to work with purchasers of proper    **Related To (1)**
from the DLBA, and provide assistance for the rehabilitation and occupancy of the
properties. Our common goal is the revitalization of the neighborhoods and returr        CMP-0018392 (/lightning/r/aEk3a000000
properties back to productive use.                                                       Compliance

Unfortunately, you are currently out of compliance with the purchase agreement :
signed for the property at **3765 Montclair** and have failed to provide regular updates
the Detroit Land Bank Authority (DLBA).

If we do not hear from you within seven (7) days, we will assume that you are choos
not to comply with the terms of the purchase agreement, and **we will begin**
**reconveyance process, transferring ownership back to the DLBA.** If the prope
is reconveyed to the Detroit Land Bank Authority you will forfeit your deposit,
purchase price, the subject property, any improvements to the property and you will
prohibited from further participation in any DLBA programs.

To avoid reconveyance, **send a photo update using your Update Reporting L**
**(URL)** below with proof showing you are making progress on the property. If you
unable to use your URL, you may email us your photos
documents@detroitlandbank.org. Please put the property address in the subject line
you don't have access to email, you may drop off the information or send it to
physical address.

All updates must be submitted using your **Update Reporting Link (URL):**
        detroitlandbankfiles.force.com//TVA_CFB__RequestFile?
        aWQ9MjAyMS0wNS0wNSAxMzozMzoyNi8jYUY0M2EwMDAwMDBicURFQ0
        (If the link above doesn't work, **CLICK HERE**)

If you have Compliance questions or concerns, call your Compliance
Representative, **Tiffany Elder,** at **(313) 989-4952.**
If you can't reach your Compliance Representative, please call the Compliance Tear
direct line, **313-974-6869.**

**Thank you for improving Detroit's neighborhoods, one house at a time!**

Sincerely,
Tiffany Elder
The Compliance Team
We look forward to hearing from you soon.

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

Damien D. Pugh,

Plaintiff,

v.

THE DETROIT LAND
BANK AUTHORITY, a public-benefit
Corporation,

Defendant.

Case No. 23-cv-10715

Hon. Jonathan J.C. Grey

**DEFENDANT DETROIT LAND
BANK AUTHORITY'S MOTION TO
DISMISS PLAINTIFF'S COMPLAINT**

**DEFENDANT DETROIT LAND BANK AUTHORITY'S BRIEF IN
SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

# Exhibit D
Recorded Reconveyance Deed

## QUIT CLAIM DEED

The Detroit Land Bank Authority, a Michigan public body corporate ("Grantor"), whose address is 500 Griswold, Suite 1200, Detroit, Michigan, 48226, conveys to Damien Deshawn Pugh, ("Grantee"), whose address is Po Box 2766, Seattle, Washington, 98111, the following premises in the City of Detroit, Wayne County, Michigan:

Legal Description: W MONTCLAIR LOT 484 ST CLAIR HEIGHTS EUGENE SLOMANS SUB L18 P50 PLATS, W C R 21/534 30 X 103.28A

Parcel ID: 21041075.

Commonly known as: 3765 Montclair, Detroit, Michigan 48214

together with all and singular the tenements, hereditaments, fixtures, and appurtenances of that property, for the full consideration of One Thousand Dollars and 00/100 ($ 1,000.00). This conveyance is exempt from taxes pursuant to MSA 7.456(5)(l)(i); MCL 207.505(l)(i), MSA 7.456(26)(l)(i); MCL 207.526(l)(i).

### NOTICE OF DEED RESTRICTION

This property is conveyed pursuant to a Purchase Agreement between DLBA and Grantee (the "Purchase Agreement") and on the express condition that Grantee fulfill all the terms and conditions applicable to Grantee set forth in the Purchase Agreement. If Grantee fails to fulfill all the terms of the Purchase Agreement applicable to Grantee, DLBA will have the right to reconvey the property back to its ownership which will be evidenced by the recording of a deed to that effect. Upon Grantee fulfilling all the terms and conditions applicable to Grantee set forth in the Purchase Agreement, DLBA will record a release of interest (a "Release of Interest").

Until a Release of Interest is recorded, Grantee is restricted from transferring or encumbering this property without the prior written consent of DLBA. If, prior to a Release of Interest being recorded, Grantee transfers or encumbers this property without the prior written consent of DLBA, DLBA will have the right to reconvey the property back to its ownership which will be evidenced by the recording of a Reconveyance Deed.

Dated: 4/30/21

Signed by Grantor:
Detroit Land Bank Authority

By: _Jeanne Hanna_
Jeanne Hanna
Director, Disposition

STATE OF MICHIGAN )
)ss.
WAYNE COUNTY )

This document was acknowledged, subscribed and sworn before me this 30 day of APRIL, 20 21, by Jeanne Hanna, Director, Disposition, Detroit Land Bank Authority.

_LaTonya Franklin_
Signature of Notary

LaTonya Franklin
Printed name of Notary

Notary Public, State of Michigan, County of: Oakland

Acting in the County of: Wayne

My commission expires: 12/30/2026

LaTonya Franklin
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF OAKLAND
My Commission Expires December 30, 2026
Acting in the County of _____

| When recorded return to: | Send subsequent tax bills to: | Drafted by: |
|---|---|---|
| Damien Deshawn Pugh Po Box 2766, Seattle, Washington, 98111 | Damien Deshawn Pugh Po Box 2766, Seattle, Washington, 98111 | Robert G Spence Detroit Land Bank Authority 500 Griswold, Suite 1200 Detroit, Michigan 48226 |
| Tax Parcel ID: 21041075. | Recording Fee: $ | Revenue Stamps: $ |